# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mark J. Williams, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Sears, Roebuck and Co., Deere & Company, Tecumseh Products Company, Briggs & Stratton Corporation, Kawasaki Motors Corp. USA, MTD Products Inc, The Toro Company, American Honda Motor Company, Inc., Electrolux Home Products, Inc., Kohler Co., Platinum Equity, LLC, and Husqvarna Outdoor Products, Inc.<br><br>Defendants. | **CIVIL NO.** __09-1415__ (      )<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mark J. Williams (hereinafter "Plaintiff"), by his undersigned counsel, on behalf of himself and a Class of those similarly situated, brings this action against Defendants and alleges the following based upon personal knowledge of the allegations pertaining to Plaintiff, and upon information, belief and the investigation of counsel as to all other allegations.

## I.      NATURE OF THE CASE

1.      For more than a decade, Defendants have lied to consumers by overstating the horsepower of lawn mower engines. In advertising and selling their lawn mowers and lawn mower engines, Defendants have defrauded the public by: (1) misrepresenting and significantly overstating the horsepower produced by such products, (2) concealing, suppressing and failing to disclose material information, including the true, significantly lower horsepower of Defendants' products and (3) falsely advertising and selling lawn mowers containing identical engines that produce the same horsepower as different products with different horsepower labels or ratings at

69178

different prices—higher prices for falsely represented higher horsepower—while concealing, suppressing and failing to disclose material information, including the facts that the engines are identical and the true, significantly lower horsepower of the lawn mowers. Plaintiff asserts claims for fraud, negligent misrepresentation, civil conspiracy, and unjust enrichment under the Civil Code and laws of Puerto Rico.  Defendants have agreed and conspired among themselves to misrepresent and conceal material facts concerning the horsepower of other Defendants' lawn mowers and lawn mower engines, while misrepresenting, significantly overstating and concealing the true horsepower of Defendants' own lawn mowers and lawn mower engines.

2.      Plaintiff brings this action on behalf of himself and a Class of similarly situated consumers who purchased lawn mowers with engines sold or manufactured by Defendants. Plaintiff, for himself and for the Class, seeks compensatory damages for the injuries to Plaintiff caused by Defendants' unlawful conduct, such additional monetary relief as allowed under the Civil Code and laws of Puerto Rico, injunctive and other equitable relief and costs of suit and reasonable attorneys' fees.

3.      Plaintiff brings these claims on behalf of himself and a Class of similarly situated persons in the Commonwealth of Puerto Rico who purchased a lawn mower containing a gas combustible engine up to 30 horsepower that was manufactured or sold by a Defendant.

## II.      JURISDICTION AND VENUE

4.      This Court has personal jurisdiction over the Defendants. The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332. Defendants have transacted business and their affairs in Puerto Rico and have committed the acts complained of in Puerto Rico. The amount in controversy exceeds $5,000,000.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (c) and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this

district.  Defendants have transacted business and their affairs in this district and have committed the acts complained of in this district.

### III.      PARTIES

#### A.     PLAINTIFF

6.     Plaintiff Mark J. Williams resides at Convento St. 281-B, San Juan, Puerto Rico 00911.  On October 15, 2006, Plaintiff purchased from Big Kmart in Mayaguez, Puerto Rico a Weed Eater lawn mower for $163.99, which contained a purported, labeled 4.75 horsepower engine manufactured by Briggs & Stratton.

#### B.     DEFENDANTS

7.     Defendant Sears, Roebuck and Co. ("Sears") is a corporation with its headquarters located at 3333 Beverly Road B-5 317A, Hoffman Estates, Illinois  60179-0001. Sears sells lawn mowers under its brand name, Craftsman, which were manufactured by Electrolux Home Products, Inc. during the Class Period and are currently manufactured by Defendant Husqvarna Outdoor Products, Inc. During the Class Period, Sears's Craftsman lawn mowers have contained engines manufactured by Tecumseh Products Company, Briggs & Stratton Corporation, Kohler Co., and American Honda Motor Company, Inc. Sears also sells certain other brands of lawn mowers in addition to its Craftsman lawn mowers. Sears advertises, markets and sells Craftsman lawn mowers throughout the United States and Puerto Rico.

8.     Defendant Deere & Company ("Deere") is an Illinois corporation with its headquarters located at One Deere Place, Moline, Illinois  61265. During the Class Period, Deere has installed in its lawn mowers engines manufactured by Defendants Briggs & Stratton Corporation, American Honda Motor Company, Inc., Kawasaki Motors Corp. USA, and Kohler Co.. Deere advertises, markets and sells lawn mowers throughout the United States and Puerto Rico.

69178

3

9.      Defendant Tecumseh Products Company ("Tecumseh") is a corporation with its headquarters located at 100 East Patterson Street, Tecumseh, Michigan  49286-2041. During the Class Period, Tecumseh has manufactured engines for installation in lawn mowers sold by Defendants Sears, Electrolux Home Products, Inc., MTD Products Inc, and The Toro Company. Tecumseh manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout the United States and Puerto Rico.

10.      Defendant Platinum Equity, LLC ("Platinum") is a California company with its headquarters located at 360 North Crescent Drive, South Building, Beverly Hills, California 90210.  Platinum acquired Defendant Tecumseh's engines division in November 2007.  During the Class Period Platinum manufactured engines that are installed in lawn mowers advertised, marketed and sold throughout the United States and Puerto Rico.

11.      Defendant Briggs & Stratton Corporation ("Briggs & Stratton") is a corporation with its headquarters located at 12301 West Wirth Street, Wauwatosa, Wisconsin  53222-2110. During the Class Period, Briggs & Stratton manufactured engines for installation in lawn mowers sold by Defendants Sears, MTD Products Inc, Electrolux Home Products Inc., Deere and The Toro Company. Briggs & Stratton has acquired certain assets of original equipment manufacturers and is engaged in the manufacturing and sale of certain lawn mowers. Specifically, in June 2004, Briggs announced its acquisition of Simplicity Manufacturing, Inc., which is headquartered in Port Washington, Wisconsin. In October 2002, Simplicity acquired Snapper, Inc., a Georgia manufacturer of lawn mowers and other outdoor products. Briggs & Stratton manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout the United States and Puerto Rico.  Briggs & Stratton advertises, markets, and sells its own brand of lawn mowers throughout the United States and Puerto Rico.

69178

4

12.     Defendant Kawasaki Motors Corp. USA ("Kawasaki") is a corporation with its corporate headquarters located at 9950 Jeronimo Road, Irvine, California  92618-2014. During the Class Period, Kawasaki manufactured engines for installation in lawn mowers sold by Defendants Deere, MTD Products Inc, Electrolux Home Products, Inc., and The Toro Company. Kawasaki manufactures engines for installation in lawn mowers advertised, marketed and sold throughout the United States and Puerto Rico.

13.     Defendant MTD Products Inc ("MTD") is a corporation with its headquarters at 5965 Grafton Road, Valley City, Ohio  44280-9329. MTD manufactures lawn mowers under the brand names Cub Cadet, Troy Bilt, Yard-Man, Yard Machines, Bolens and White Outdoor. During the Class Period, MTD installed in its lawn mowers engines manufactured by Defendants Briggs & Stratton, American Honda Motor Company, Inc., Kawasaki, Kohler Co. and Tecumseh. MTD advertises, markets and sells lawn mowers throughout the United States and Puerto Rico.

14.     Defendant The Toro Company ("Toro") is a corporation with a corporate address of 8111 Lyndale Avenue South, Bloomington, Minnesota  55420-1136. Toro manufactures lawn mowers under the brand names Toro, Lawn-Boy and Exmark. During the Class Period, Toro installed in its lawn mowers engines manufactured by Defendants Tecumseh, Kawasaki, The Kohler Co. Company, American Honda Motor Company, Inc., and Briggs & Stratton. Toro advertises, markets and sells lawn mowers throughout the United States and Puerto Rico.

15.     Defendant American Honda Motor Company, Inc. ("Honda") is a subsidiary of Honda Corporation with a corporate address of 4900 Marconi Drive, Alpharetta, Georgia 30005-2033. During the Class Period, Honda manufactured engines for installation in lawn mowers sold by Defendants MTD, Deere, Electrolux Home Products, Inc., and Toro. Honda

advertises, markets and sells lawn mowers and lawn mower engines throughout the United States and Puerto Rico.

16.     Defendant Electrolux Home Products, Inc. ("Electrolux") is a corporation with a corporate address of 18013 Cleveland Parkway, Suite 100, Cleveland, Ohio  44135-3235. Electrolux manufactured lawn mowers as American Yard Products ("AYP"). Electrolux also did business as Husqvarna Outdoor Products Inc., and Husqvarna AB until June 2006. AYP produced lawn mowers marketed under the brand names Poulan, Poulan PRO, Weed Eater and Husqvarna. AYP also manufactured lawn mowers for Sears sold under the Sears Craftsman brand. During the Class Period, Electrolux installed in its lawn mowers engines manufactured by Defendants Tecumseh, Kawasaki, Kohler Co., Honda and Briggs & Stratton. During the Class Period, Electrolux advertised, marketed and sold lawn mowers throughout the United States and Puerto Rico. In June 2006, Electrolux's outdoor products segment was spun-off. A separate entity resulting from the spin-off is known as Husqvarna Outdoor Products, Inc.

17.     Defendant Husqvarna Outdoor Products, Inc. ("Husqvarna") is a company with a corporate address of 1030 Stevens Creek Rd, Augusta, Georgia 30907.  Husqvarna manufactures lawn mowers advertised, marketed and sold throughout the United States and Puerto Rico. Husqvarna manufactures lawn mowers marketed under the brand names Poulan, Poulan Pro, Weed Eater and Husqvarna, as well as lawn mowers sold under Sears's Craftsman brand.

18.     Defendant Kohler Co. ("Kohler") is a corporation with headquarters located at 444 Highland Drive, Kohler, Wisconsin 53044. During the Class Period, Kohler manufactured engines for installation in lawn mowers sold by Defendants Deere, Toro, Electrolux, and MTD. Kohler manufactures engines that are installed in lawn mowers advertised, marketed and sold throughout the United States and Puerto Rico.

## IV.    AGENTS AND CO-CONSPIRATORS

19.    The acts alleged against the Defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of Defendants' businesses or affairs.

20.    Various persons and/or firms not named as Defendants herein may have participated as co-conspirators in the violations alleged herein and may have performed acts and made statements in furtherance thereof.

21.    Each Defendant acted as the principal, agent, or joint venturer of, or for, other Defendants with respect to the acts, violations, and common course of conduct alleged by Plaintiff.

## V.    FACTUAL ALLEGATIONS

22.    Defendants manufacture, advertise, market and sell lawn mowers and the engines installed in lawn mowers to consumers throughout the United States and Puerto Rico.

23.    Defendants currently sell nearly six million lawn mowers to the public throughout the United States and Puerto Rico, per year.

24.    During the Class Period, Defendants have used the unit of horsepower to label, categorize and market their lawn mowers and lawn mower engines. The higher the actual horsepower, the more power the engine produces.

25.    The more horsepower generated by a lawn mower's engine, the better and faster the lawn mower is able to perform.

26.    Defendants market and offer for sale at higher prices lawn mowers labeled or otherwise advertised with higher horsepower.  The higher the horsepower, the higher the price Defendants charge.  Consumers throughout Puerto Rico, including Plaintiff and members of the

proposed Class, pay more for lawn mowers labeled or otherwise represented by Defendants as producing higher horsepower.

27.     The horsepower of a lawn mower is a material fact, one that is important to a consumer and is the type of information upon which a buyer would be expected to rely in making a purchasing decision. Statements of horsepower are factual representations that are likely to affect the lawn mower purchasing decisions or conduct of consumers, including Plaintiff and members of the proposed Class. As Defendant Briggs & Stratton's president and CEO, John Shiely, explained during an April 20, 2006 conference call with shareholders and analysts: "As far as the customers are concerned, it's always been our experience that, you know, more horsepower is better and that, ultimately that becomes the demand, that becomes what the customer wants."

## A.      DEFENDANTS' MISREPRESENTATIONS OF HORSEPOWER

28.     The horsepower purportedly generated by Defendants' lawn mowers is identified as a number on labels located on the lawn mowers or on the lawn mowers' engines, and/or in Defendants' other advertising, including packing materials, owner's manuals, materials distributed with Defendants' lawn mowers, Defendants' websites, and point-of-sale and other promotional materials disseminated or caused to be disseminated by or on behalf of Defendants to the public throughout the United States and Puerto Rico.

29.     Defendants have knowingly misrepresented and significantly overstated the horsepower of Defendants' lawn mowers and lawn mower engines.

30.     Throughout the Class Period (January 1, 1994 through the present), Defendants have knowingly misrepresented the horsepower of Defendants' lawn mowers and lawn mower engines through statements and representations made and disseminated to the public in

Defendants' advertising, including product labeling, packing materials, owner's manuals, websites, point-of-sale materials and other promotional materials.

31.     In fact, the true horsepower of Defendants' engines is significantly less than the horsepower represented by Defendants in advertising, marketing and selling their lawn mowers and lawn mower engines to the public.

**B.     DEFENDANTS MARKET AND SELL LAWN MOWERS CONTAINING IDENTICAL ENGINES AS DIFFERENT PRODUCTS AT DIFFERENT PRICES—HIGHER PRICES FOR FALSELY REPRESENTED HIGHER HORSEPOWER.**

32.     Defendants knowingly advertise, market and sell identical engines with varying horsepower ratings and labels, thereby representing (directly and by implication) that these identical engines are different.  In fact, these engines are identical on the basis of horsepower. Defendants sell these identical, but differently and misleadingly labeled, engines at different prices—with higher prices for engines falsely labeled with purported higher horsepower. Defendants thereby represent that the products are different when they are not but, rather, contain identical engines.

33.     In advertising, marketing and selling such engines, Defendants charge or cause to be charged a higher price for such identical engines containing a falsely represented higher horsepower.

34.     In advertising, marketing and selling such lawn mowers, Defendants conceal, suppress and fail to disclose the material fact that the lawn mowers contain identical engines.

35.     In selling such lawn mowers containing identical engines that produce the same horsepower as different products and at different prices—higher prices for falsely represented higher horsepower—Defendants repeatedly misrepresent the horsepower of the engines and

69178                                                9

conceal, suppress and fail to disclose material facts, including that such products contain identical engines and the true, significantly lower horsepower of the engines.

## C.   CONCEALMENT, SUPPRESSION AND OMISSIONS OF MATERIAL FACTS

36.   In advertising, marketing and selling their lawn mowers and lawn mower engines to the public, Defendants have repeatedly concealed, suppressed and failed to disclose material information, including the true, significantly lower horsepower of their lawn mowers and lawn mower engines.

37.   Defendants' advertising, including labeling, packing materials, owner's manuals, websites, point-of-sale materials and other promotional materials, conceals, suppresses and fails to disclose the true, significantly lower horsepower actually produced by Defendants' lawn mowers and lawn mower engines.

38.   Defendants published, and caused third party websites to publish, misleading information regarding lawn mower horsepower in an attempt to conceal and suppress the material fact of the true lower horsepower of Defendants' products.

## D.   CONSPIRACY TO DEFRAUD THE PUBLIC AND TO CONCEAL DEFENDANTS' FRAUDULENT PRACTICES

39.   While knowingly misrepresenting horsepower in advertising, marketing and selling their own lawn mowers and lawn mower engines to the public, Defendants know that the other Defendants' lawn mower engines do not produce the horsepower represented by such other Defendants. Defendants have routinely tested other Defendants' engines and are aware that the other Defendants also misrepresent the horsepower of their engines and that other Defendants conceal, suppress, and fail to disclose to the public the true, significantly lower horsepower of their engines.

69178

10

40.     While knowing of the other Defendants' horsepower misrepresentations and omissions, Defendants agreed to conceal, suppress and fail to reveal the horsepower misrepresentations and omissions of the other Defendants.

41.     Defendants communicated among themselves and agreed and conspired to conceal and suppress other Defendants' misrepresentations and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while misrepresenting, significantly overstating the horsepower, and concealing and suppressing the true, significantly lower horsepower of Defendants' own lawn mowers and lawn mower engines.

42.     Defendants have an incentive to hide truthful information about the true, lower-than-represented horsepower of each other's lawn mowers and lawn mower engines from the public, since Defendants are all engaging in the false, misleading, and deceptive advertising and unfair and deceptive trade practices and unlawful conduct set forth in this Complaint.

43.     As a result of their conspiracy to conceal truthful horsepower information and defraud the public, Defendants are able to continue to misrepresent, conceal, and suppress the true horsepower of Defendants' lawn mowers and lawn mower engines sold to Plaintiff and the public and charge higher prices than they would if not for their misrepresentations and illegal concerted activity.

**Defendants' Power Labeling Task Force Furthered and Concealed their Fraud**

44.     Defendants Deere, Tecumseh, Briggs & Stratton, Kawasaki, MTD, Toro, Honda, Electrolux, and Kohler are all members in a group that they call the "Power Labeling Task Force," which provides Defendants the means, opportunity and cover to meet, discuss, conspire, conceal and further their fraudulent horsepower misrepresentations.  The Power Labeling Task Force regularly met at various locations, and agendas of the meetings were distributed in advance of the meetings. After the meetings, minutes and other summaries of the meetings were also distributed to Defendants.

OPEI website

45.     In or about 2001, the members of the Power Labeling Task Force, including representatives of Defendants, met and discussed various means by which to conceal horsepower fraud and misrepresent horsepower to the consuming public. One suggestion was to put a "disclaimer"—a statement containing misleading information on horsepower issues designed to confuse the consuming public—on the Outdoor Power Equipment Institute ("OPEI," an otherwise legitimate organization) website. The disclaimer was titled "Understanding Horsepower" and includes misleading information on horsepower issues.

46.     On July 10, 2001, William G. Harley and Patrick W. Curtiss of the OPEI mailed to Defendants a memorandum listing the uniform means by which the Power Labeling Task Force members intended to misrepresent horsepower testing procedures and to conceal Defendants' fraudulent horsepower labeling practices from consumers.

47.     The members of the Power Labeling Task Force, which are also members of the OPEI, voted in favor of the proposal, and the OPEI created the webpage containing misleading horsepower information.  The webpage continues to be on the OPEI's website.

48.     Defendants' conduct rises above mere fraud. Not only do Defendants lie about the horsepower of their lawn mowers and lawn mower engines, Defendants conspired to conceal these lies and deceive the consuming public by using the website of a legitimate entity.

### The creation of and amendment to SAE J1940

49.     The Society of Automotive Engineers ("SAE") is an automotive industry organization that creates and publishes engineering standards that are voluntarily followed by manufacturers.  Standards are promulgated through committees that include industry members. During the Class Period, Defendants Briggs & Stratton, Kohler, Tecumseh, Kawasaki and Honda were members of the SAE Small Engine & Power Equipment Committee, which is the committee responsible for small engines, including lawn mower engines. Defendant Tecumseh's employee and agent, Mike Adams, was Chairman, and Defendant Kohler's employee and agent Mark Swanson also served in a leadership capacity as the secretary of the SAE Small Engine & Power Equipment Committee. All five engine manufacturing Defendants became members of the SAE Small Engine & Power Equipment Committee.

50.     In the late 1980s, several Defendants became aware of concerns expressed about horsepower fraud. They then took action within the SAE and implemented a "labeling standard" called "SAE J1940" the purpose and effect of which was to conceal horsepower fraud.  This labeling standard was an attempt to give Defendants a purportedly legitimate reason for labeling their engines with a horsepower representation different than what their test results achieved and to conceal their conspiracy and illegal acts. There is no legitimate reason for a horsepower labeling standard. Instead, Defendants should label their engines with the actual horsepower achieved by the horsepower test.

51.     In or about 2000, the Power Labeling Task Force instructed its members, which were also members of the SAE Small Engine & Power Equipment Committee, to recommend to the rest of the committee that revisions to SAE J1940 be made which would further conceal Defendants' fraudulent horsepower representations.  The Power Labeling Task Force amended, or caused to be amended, the SAE J1940 labeling standard to allow for a "fudge factor" of up to 15% to be added to horsepower labels.  The Power Labeling Task Force also concealed the true reasons for the amendments to SAE standards by creating false or misleading explanations for the purpose of, or reasons for, those amendments.  Even assuming that Defendants use accurate horsepower testing procedures, the amended SAE J1940 standard explicitly "permits" Defendants to lie about horsepower to consumers, and then to point to the labeling standard that they conspired to create through the Power Labeling Task Force as the fraudulent justification for the overstatement of horsepower. Because the SAE J1940 standard appears on its face to be a standard of the SAE—an otherwise legitimate association—Defendants' fraudulent horsepower labeling practices are given the imprimatur of legitimacy and their conspiracy is concealed.

Creation of SAE J1995 "gross" horsepower

52.     In 1990, Defendants conspired to create another SAE standard to both conceal horsepower fraud and to give Defendants another means to affirmatively misrepresent horsepower to the consuming public. In 1990, several Defendants caused to be created, published and disseminated worldwide SAE J1995, which is a "gross" horsepower testing protocol. "Gross" horsepower is the theoretical horsepower that an engine could achieve under ideal laboratory conditions with all of the legally required accessories removed from the engine—such as the air filter and exhaust mechanism. By causing the creation of SAE J1995, Defendants created a new, entirely different definition of horsepower for lawn mowers and lawn mower

engines that is deceptive to consumers. Prior to 1990, Defendants used "net" horsepower, which is the horsepower used in other industries, such as the auto industry.

53.     "Gross" horsepower is deceptive because by removing the necessary components, such as exhaust systems and air filters, which drain an engine of power, a higher horsepower can be achieved in the laboratory than in the field. Of course, no consumer ever uses a lawn mower without an exhaust, air filter and all of the other necessary parts of an engine. Further, it is against federal law to sell a lawn mower without such parts.

54.     Throughout the Class Period, Defendants labeled their engines with gross horsepower in "accordance" with the fraudulently created SAE J1995 standard.  Because Defendants rely on SAE J1995 and continue to use "gross" horsepower instead of net horsepower, Plaintiff and members of the Class, and future purchasers of mislabeled lawn mowers, have been injured as a result of this conspiracy.

55.     Defendants' conspiratorial use of gross horsepower to label their engines is fraudulent. In labeling their engines, Defendants did not disclose what gross horsepower means, and never disclose that the horsepower they use to label their engines differs from the horsepower used by other industries such as the automobile industry.

                    Torque power

56.     In or about 2004, the Power Labeling Task Force began meeting and discussing alternative means of labeling horsepower and to further their conspiracy. Defendant Briggs & Stratton coordinated the alternative labeling research. The research was presented to the members of the Power Labeling Task Force by Stuart Drake of Kirkland & Ellis, who proposed that the Power Labeling Task Force take action to use alternative labeling practices. The Power Labeling Task Force continued to meet and discuss alternatives up until at least June 2, 2004.

57.     Starting in 2007, several Defendants, including Defendants MTD and Briggs & Stratton began labeling their lawn mower engines with "torque." Defendant Briggs & Stratton entered into an indemnity agreement with Defendant MTD whereby Defendant Briggs & Stratton agreed to indemnify Defendant MTD for claims of fraud arising from the labeling of lawn mowers and lawn mower engines with "torque." Defendants point to the amended SAE J1940 standard as the authority that allows them to label with "torque," despite the fact that engineers assert that "torque" is not an appropriate quantifier of power and should not be used in power labeling.

58.     Although Defendants did not begin to use "torque" to label engines until 2007, Defendants rely on the 2002 amendment to SAE J1940 for justification to use torque to label engines. As such, this conduct demonstrates a continued risk that the Power Labeling Task Force will take further steps in the future to fraudulently label lawn mowers and lawn mower engines and conceal their fraud from the public.

                Defendant Engine Manufacturers Conspired to Conceal their Fraud

59.     Defendants Briggs & Stratton, Kohler and Tecumseh formed a private group that they called the "Eagle Group" to discuss common issues facing their companies, such as proposed federal and state environmental regulations.  The Eagle Group has been a means for Defendants to discuss horsepower overstatement and proposed methods to conceal their respective fraud.

60.     The Eagle Group has met in Wisconsin and Illinois and has existed since at least 1994.  The Eagle Group has appeared at Power Labeling Task Force meetings.

                "Most Powerful" Craftsman Conspiracy

69178                                                16

61.     Defendant Sears has, since 1927, sold a variety of products under the Craftsman brand, from hand tools to power equipment. Since at least the mid-1990s, and at all times during the Class Period, Defendant Sears has sold Craftsman lawn mowers, which Defendant Sears has touted as the "most powerful" lawn mowers on the market. Since at least the mid-1990s, and at all times during the Class Period, Defendants have sold lawn mowers to Defendant Sears, including the lawn mowers sold under the Craftsman brand.

62.     Defendants Briggs & Stratton, Kohler, Electrolux and Sears conspired to deceive consumers by significantly overstating horsepower to the public, as well as concealing truthful horsepower information from the consuming public.  During the Class Period, Sears marketed, advertised and sold lawn mowers it claimed were the "most powerful" on the market. Briggs & Stratton reserves the highest fraudulent horsepower labels exclusively for lawn mowers sold at Sears—despite the fact that the horsepower of the Sears Craftsman lawn mower engines, contrary to Sears's representations as the "most powerful" engines, is not greater than the same engines sold by Briggs & Stratton to other lawn mower manufacturers.  Briggs & Stratton conspired with Sears to provide Sears with the exclusive right to the highest fraudulent horsepower labels.

63.     Defendants Briggs & Stratton, Kohler, Electrolux, and Sears's conspiracy allowed Sears to represent to the consuming public that Sears sells "the most powerful" lawn mower engines in the world.  For example, on April 9, 2002, in a news release put on the wires from its Hoffman Estates, Illinois headquarters, Sears announced that Sears's "Craftsman has introduced a propelled, front-wheel-drive lawn mower with a 7 hp Briggs & Stratton engine – the most powerful lawn mower engine ever built for use at home."  The press release goes on to state that "[t]he industry's mightiest mower is joined by the most powerful consumer tractor on the market

– the Craftsman 27 hp Kohler Pro Garden Tractor." This fraudulent misrepresentation has been transmitted continuously via the Internet since April 9, 2002.

64.    The representations made by Sears in the April 9, 2002 press release that was disseminated on the Internet and via the United States mails stating that the "7 hp" Briggs & Stratton engine and the "27 hp" Kohler engine are the "most powerful" engines on the market are patently false and misleading. The advertised Briggs & Stratton engine produces far less than 7 horsepower. The advertised Kohler engine produces far less than 27 horsepower. Further, the engine that Briggs & Stratton, Electrolux, and Sears knowingly advertise, including through labeling, marketing, and selling to consumers the "most powerful" walk-behind lawn mower—the 7 horsepower Briggs & Stratton engine—is the same engine that is sold to other consumers with horsepower labels less than 7 horsepower. Further, the engine that Kohler, Electrolux, and Sears knowingly advertise, including through labeling, marketing, and selling to consumers as the "most powerful" riding lawn mower—the 27 horsepower Kohler engine—is the same engine that is sold to other consumers with horsepower labels less than 27 horsepower.

**E.    DEFENDANTS FRAUDULENTLY CONCEALED THEIR CONTINUING FRAUD FROM DISCOVERY BY PLAINTIFF**

65.    Plaintiff and members of the proposed Class did not know, and had no reasonable way of knowing (a) that Defendants, in advertising, marketing and selling their lawn mowers and lawn mower engines, engaged in the unfair and deceptive acts or practices and other unlawful conduct set forth in this Complaint, (b) of the falsity of Defendants' material misrepresentations, or (c) of Defendants' conspiracy to conceal and suppress truthful information about the actual horsepower of other Defendants' lawn mowers and lawn mower engines, while concealing and suppressing truthful information about the actual, significantly lower-than-represented horsepower of Defendants' own lawn mowers and lawn mower engines.

69178                                                         18

66.     Defendants affirmatively and actively concealed their misrepresentations and omissions and their conspiracy in order to avoid detection and hide their unlawful conduct from Plaintiff and the public.

67.     Defendants' conduct of misrepresenting and concealing material facts concerning the horsepower of Defendants' lawn mowers and lawn mower engines, and Defendants' conduct in advertising, marketing and selling lawn mowers containing identical engines as different products at different prices—higher prices for falsely represented higher horsepower—without disclosing the material facts that the engines are identical and the true, significantly lower horsepower of such products, concealed from Plaintiff his causes of action.

68.     Defendants further concealed their use of the same engines in differently labeled and differently priced lawn mowers by covering the engines with different shrouds or covers that typically display a different horsepower number, even though the covered engine is identical to that contained in lawn mowers with different shrouds or covers (and typically with a different horsepower label on the shrouds). These shrouds or covers have no effect on performance of the lawn mower. Defendants use them as fraud covers to falsely represent that such lawn mowers are different products (with different horsepower ratings), which Defendants advertise and sell at different prices (higher prices for higher falsely represented horsepower). In fact, such products are not different, contain identical engines and do not produce the horsepower represented by Defendants.

69.     Defendants' actions in causing the amendment of the SAE J1940 labeling standard further hid their fraud.  As a result of the amendments, the SAE J1940 standard provides that production engines shall develop not less than 85% of the labeled horsepower. The change to the SAE J1940 standard effected by Defendants provides for a built-in "fudge factor."

For example, an engine is "accurately" labeled under SAE J1940 if its label states it produces 20 horsepower but only produces 17 horsepower when tested. This misleading "fudge factor" alone is fraudulent, however, Defendants inflate their horsepower ratings even higher than the "fudge factor."

70. Additionally, the amended SAE J1940 standard provides Defendants with the option of representing the power of their engines on the basis of "torque power." "Torque power" is not a measure of anything and is a meaningless, fictional value concocted for the sole purpose of concealment.

71. The true purpose of these changes was to provide cover for and conceal Defendants' fraudulent horsepower misrepresentations and omissions. At meetings attended by Defendants' representatives, it was made clear that the purpose of these changes was to conceal Defendants' past fraud, and to allow Defendants to continue their fraudulent labeling practices.

72. Defendants' misrepresentations and omissions concerning the horsepower of Defendants' lawn mowers and lawn mower engines have continued despite the changes to the SAE J1940 standard effected by Defendants. Defendants misrepresent and overstate the horsepower of Defendants' lawn mower engines in excess even of the "fudge factor" provided for in the amended voluntary horsepower labeling standard SAE J1940.

73. Defendants met during the Class Period to discuss ways to conceal their fraud. In June 2003, at an annual board meeting of the OPEI in Colorado Springs, Colorado, John Jenkins, the President of Defendant Deere, warned representatives of several Defendants that if the industry did not address the fraudulent horsepower inflation, he would "blow the whistle" on Defendants' conduct.

74.     At the foregoing meeting, an executive from Defendant Kohler informed an executive of Defendant MTD that a proposal would be drafted by the Eagle Group to address the issue of horsepower inflation and overstatement.

75.     At the April 2004 meeting of the Power Labeling Task Force, a proposal was made for Defendants to take advantage of the amended SAE labeling standard to use "torque power" instead of horsepower in advertising, marketing and selling Defendants' lawn mowers and lawn mower engines. Defendants proposed using "torque power" in order to conceal their misrepresentations and omissions concerning horsepower, because torque has a higher numerical value or number than horsepower and is more confusing to consumers. Changing to "torque power" was an opportunity for Defendants to further conceal their fraud by using a number that is meaningless on an objective, engineering basis, and is simply designed to draw attention away from Defendants' fraudulent conduct involving horsepower misrepresentations and omissions.

76.     Defendants' unlawful conduct and conspiracy as set forth in this Complaint is inherently self-concealing.

77.     Plaintiff and Class members had no realistic means of discovering or detecting Defendants' horsepower misrepresentations and omissions. Plaintiff does not own or have access to testing equipment necessary to test the actual horsepower of Defendants' lawn mower engines. The testing equipment is virtually impossible for consumers to find and is cost-prohibitive.

78.     Plaintiff and Class members had no viable way of determining from the horsepower reported by Defendant engine manufacturers Briggs & Stratton, Kawasaki, Tecumseh, Toro, Kohler, and Platinum (doing business as Tecumseh Power Company) to the United States Environmental Protection Agency ("EPA") and the California Air Resources

Board ("CARB") the actual horsepower of particular models of lawn mowers sold by Defendants.

79.     Plaintiff and the Class are under no duty to inquire into the truthfulness of Defendants' representations, including Defendants' representations concerning the horsepower of Defendants' lawn mowers and lawn mower engines. In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants owe a duty to Plaintiff, all Class members and the public to provide truthful, non-deceptive information and to avoid and refrain from unfair and deceptive, and otherwise unlawful acts and practices, including false or misleading advertising.

80.     Defendants also used the OPEI to conceal their fraud by drafting and having placed on the OPEI's website the "Understanding Horsepower" webpage. Through this website posting, Defendants concealed their fraud by attempting to explain away any detectable horsepower shortcomings. While Defendants use gross horsepower to label their engines, the representations made on the OPEI's website state that factors such as atmospheric conditions were to blame for the lack of horsepower in their engines. This website posting is misleading and is designed not to inform consumers, but to conceal Defendants' fraud. Rather than correct their horsepower misrepresentations, Defendants developed more misrepresentations to conceal their fraud and conspiracy.

81.     Plaintiff, in the exercise of due diligence, was not aware of and did not discover the facts underlying his claims, or facts indicating that Defendants' unlawful conduct caused Plaintiff's harm, until shortly before the filing of this Complaint.

82.     Defendants' unlawful practices as described in this Complaint are continuing in nature.

83.     Unless enjoined, Defendants' unlawful conduct will continue and Plaintiff and members of the Class will continue to purchase Defendants' lawn mowers and lawn mower engines subject to Defendants' unlawful acts and practices set forth in the Complaint.

**F.     DEFENDANTS' FRAUD IS MANIFESTED IN THE DISPARITY BETWEEN THE LOWER HORSEPOWER REPORTED BY DEFENDANT MANUFACTURERS TO THE GOVERNMENT AND THE FALSE, FAR HIGHER HORSEPOWER DEFENDANTS MISREPRESENT TO THE PUBLIC**

84.     Since at least 1997 small engine manufacturers have been required under the Clean Air Act and the California Clean Air Act to submit the maximum gross horsepower ratings of their lawn mower engines to the EPA and CARB.

85.     Since at least 1997, in perpetrating their fraudulent horsepower scheme, Defendants Briggs & Stratton, Kawasaki, Tecumseh, Toro, Kohler, and Platinum (doing business as Tecumseh Power Company) have reported horsepower ratings to the EPA and CARB that are significantly lower than the inflated, false, misleading and deceptive horsepower representations Defendants make in advertising, marketing and selling Defendants' lawn mower engines.

86.     For example, Tecumseh reported to the EPA that its LV195 lawn mower engine produces 3.67 horsepower, yet Tecumseh represented to the consuming public, including to Plaintiff, on labels and elsewhere, that the LV195 engine produces 6.75 horsepower. This is an overstatement of approximately 84%.

87.     Similarly, Briggs & Stratton reported to the EPA that its Model 125k lawn mower engine produces 3.6 horsepower, yet Briggs & Stratton represented to the consuming public, including Plaintiff, that its Model 125k engine produces 6.75 horsepower. This is an overstatement of about 88%.

88.     In their advertisements, including product labels, packing materials, websites, and point-of-sale and other marketing materials, Defendants Briggs & Stratton, Kawasaki,

Tecumseh, Platinum, Toro, Kohler, and Platinum (doing business as Tecumseh Power Company) repeatedly conceal, suppress and fail to disclose both the lower horsepower ratings said Defendants report to the EPA and CARB, and the fact that these Defendants report lower horsepower ratings to the EPA and CARB than the significantly higher horsepower falsely represented by Defendants in advertising, marketing and selling their lawn mower engines.

**G.    HARM TO PLAINTIFF AND CLASS MEMBERS**

89.    Plaintiff and members of the proposed Class are consumers who have been injured in their money or property by purchasing Defendants' lawn mowers and lawn mower engines that were not as represented by Defendants.

90.    Plaintiff and the members of the proposed Class suffered actual damages in purchasing lawn mowers that were not as powerful as, and did not contain the horsepower, represented by Defendants and Plaintiff and members of the proposed Class did not receive the benefit of their bargains.

91.    Plaintiff and members of the proposed Class paid more for their lawn mowers than they would have paid absent Defendants' unlawful conduct.

92.    As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class were deprived of the opportunity to make informed purchasing decisions based on truthful information, including, without limitation, not purchasing Defendants' products, or not paying prices for Defendants' products that were inflated due to Defendants' deceit.

93.    As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class lost the opportunity to purchase accurately labeled, lower horsepower lawn mowers and to pay lower prices for such products, rather than the higher prices Defendants charged or caused to be charged for Defendants' misrepresented products.

94.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Class were deprived of the opportunity of making an informed purchasing decision, and were deprived of the opportunity to refuse to do business with companies, such as Defendants, engaged in fraudulent and deceptive conduct.

95.     As a proximate result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class have suffered damages in an amount to be determined at trial.

96.     Defendants have been and continue to be unjustly enriched by selling millions of misrepresented products to the public through systematic fraud and deception.

**H.      PUBLIC INTEREST AND BENEFIT**

97.     Plaintiff brings this action on behalf of himself and all similarly situated persons in the proposed Class for the relief requested as to Plaintiff and Class members and to promote the public interests in the provision of truthful, non-deceptive information to the public in order to allow consumers to make informed purchasing decisions, and in protecting Plaintiff and the public from Defendants' unfair, deceptive and fraudulent practices.

98.     Defendants' misrepresentations and omissions of material facts and other unlawful conduct as set forth in this Complaint were effected through Defendants' advertising directed to Plaintiff and the public at large and disseminated throughout the United States and Puerto Rico.

**VI.      CLASS ACTION ALLEGATIONS**

99.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), and the Consumer Class Action Act, P.R. Laws Ann. 32 §§ 3341-3344, Plaintiff brings this action on behalf of himself and the members of the following proposed Class:

> All persons in Puerto Rico who, beginning January 1, 1994 through the present purchased, for their own use and not for resale, a lawn mower containing a gas

combustible engine up to 30 horsepower provided that either the lawn mower or the engine of the lawn mower was manufactured or sold by a Defendant.

100.    Excluded from the Class are (i) each Defendant, any entity in which a Defendant has a controlling interest or which has a controlling interest in any Defendant, and Defendants' legal representatives, predecessors, successors and assigns; (ii) governmental entities; (iii) Defendants' employees, officers, directors, agents, and representatives and their family members; and (iv) the Judge and staff to whom this case is assigned, and any member of the Judge's immediate family.

101.    Members of the proposed Class are so numerous that the individual joinder of all absent Class members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time, it is ascertainable by appropriate discovery. Plaintiff is informed and believes, based upon the nature of the trade and commerce involved, that the proposed Class includes thousands of Class members.

102.    There are questions of law or fact common to the members of the Class and such common questions predominate over questions affecting individual members. Among the questions of law or fact common to the applicable proposed Class are:

a.     Whether Defendants misrepresented the horsepower produced by the engines in the lawn mowers manufactured or sold by Defendants to Plaintiff and members of the Class;

b.     Whether Defendants concealed, suppressed and failed to disclose truthful information concerning the horsepower produced by the engines manufactured or sold by Defendants in lawn mowers sold to Plaintiff and members of the Class;

c.    Whether Defendants' representations and omissions regarding the horsepower produced by lawn mowers and lawn mower engines manufactured or sold by Defendants involved representations and omissions of material facts;

d.    Whether Defendants advertised and sold lawn mowers containing identical engines as different products at different prices (higher prices for falsely represented higher horsepower), without disclosing the fact that the engines contained in such products are identical;

e.    Whether Defendants' misrepresentations, omissions and other conduct set forth in this Complaint occurred in the course of trade or commerce and/or in the conduct of business;

f.    Whether Defendants conspired to conceal and suppress truthful information about the actual, significantly lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines;

g.    Whether Plaintiff and members of the proposed Class have been injured by Defendants' conduct;

h.    Whether Plaintiff and the members of the proposed Class are entitled to damages;

i.    Whether Plaintiff and the members of the proposed Class are entitled to monetary relief as provided under the law of the Commonwealth;

j.    Whether Defendants were unjustly enriched as a result of Defendants' conduct set forth in this Complaint;

      k.      Whether Defendants conspired to defraud the public and engaged in the unlawful acts or practices in furtherance of the conspiracy as set forth in this Complaint;

      l.      Whether injunctive relief is appropriate; and

      m.      Whether Plaintiff is entitled to recover costs and expenses incurred in prosecuting this action and reasonable attorneys' fees.

103.    Plaintiff's claims are typical of the claims of the Class. Plaintiff and members of the proposed Class all purchased lawn mowers containing engines manufactured and sold by Defendants. Plaintiff and the members of the proposed Class have all suffered damages as a result of Defendants' common conduct and fraudulent scheme, including Defendants' horsepower misrepresentations and omissions and other unlawful conduct set forth in this Complaint.

104.    Plaintiff will fairly and adequately protect the interests of the proposed Class. Plaintiff has no interests adverse to the interests of the members of the proposed Class. Plaintiff has retained competent counsel who has extensive experience in prosecuting consumer fraud and complex class action litigation.

105.    The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

106.    Defendants have acted or refused to act on grounds generally applicable to the Class. Declaratory and injunctive relief with respect to the Class is appropriate.

107.    The questions of law or fact common to members of the proposed Class predominate over any individual questions affecting only individual Class members. Each of the

69178

members of the proposed Class purchased a lawn mower that was not as represented due to Defendants' misrepresentations of, and concealment, suppression and failure to disclose the actual, significantly lower horsepower of the lawn mower and lawn mower engine. The issues of fact and law applicable to the Class are identical to the issues of fact and law applicable to each individual member of the proposed Class.

108.    A class action is an appropriate method for the fair and efficient adjudication of this controversy and class action treatment is superior to the alternatives. There is no special interest in the members of the Class individually controlling the prosecution of separate actions. The damages sustained by individual Class members will not be large enough to justify individual actions, especially in proportion to the tremendous costs and expenses necessary to prosecute this action. The expense and burden of individual litigation makes it impossible for members of the Class individually to address the wrongs done to them. Class treatment will permit the adjudication of claims of Class members who could not afford individually to litigate their claims against Defendants. Further, as a result of Defendants' concealment, thousands of Class members remain unaware that they have been injured and will not be aware of Defendants' fraud, or the extent and nature of their injury, in the absence of this class action. Class treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. Furthermore, Defendants transact substantial business throughout the United States and Puerto Rico.

69178

Defendants will not be prejudiced or inconvenienced by the maintenance of this class action in this forum.

## VII.    VIOLATIONS ALLEGED

### COUNT 1

**Fraud in Violation of Puerto Rico Law and P.R. Laws Ann. 31 §§ 3404 – 3409**

109.    Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

110.    In advertising, marketing and selling their lawn mowers and lawn mower engines in Puerto Rico, including to Plaintiff and members of the Class, Defendants made the following misrepresentations and omissions:

  a.    Defendants misrepresented the horsepower of their lawn mowers and lawn mower engines in that the actual horsepower of Defendants' lawn mowers and lawn mower engines is less than as represented by Defendants.

  b.    While misrepresenting the horsepower of their lawn mowers and lawn mower engines, Defendants concealed, suppressed, omitted and failed to disclose material facts, including the true lower horsepower of their lawn mowers and lawn mower engines.

  c.    In advertising, marketing and selling lawn mowers containing identical engines that produce the same horsepower as different products at different prices (higher prices for falsely represented higher horsepower), while misrepresenting and overstating the horsepower of such products, Defendants falsely represented such products.  Contrary to Defendants' representations, such products are not different products, contain identical engines and do not produce the horsepower represented by Defendants.

Defendants concealed, suppressed, failed to disclose and omitted material facts concerning such products, including the facts that such products are not different products, contain identical engines and the true, lower horsepower produced by such products.

111.    In advertising, marketing and selling Defendants' lawn mowers and lawn mower engines, Defendants made the misrepresentations and omissions set forth in this Complaint in Defendants' advertising, labeling, packing materials, owner's manuals, websites, point-of-sale materials and other promotional materials disseminated by or on behalf of Defendants in Puerto Rico.

112.    Defendants' misrepresentations as set forth in this Complaint are material in that they relate to matters which are important to consumers or are likely to affect the purchasing decisions or conduct of consumers, including Plaintiff and members of the Class, regarding Defendants' products.

113.    Defendants' representations and omissions were uniform as to each lawn mower, and no material variation exists among the representations and omissions made to Plaintiff and the Class for each lawn mower.

114.    Defendants made the misrepresentations set forth in this Complaint with knowledge of their falsity, or in reckless disregard for the truth or falsity of Defendants' representations.

115.    Defendants made the representations and omissions set forth in this Complaint with the intent that such representations be acted and relied upon by consumers, including Plaintiff and members of the Class.

116.    Plaintiff and members of the Class were ignorant of the falsity of Defendants' representations as set forth in this Complaint.  Plaintiff and members of the Class did not know, and could not have discovered through reasonable diligence, that Defendants, in advertising, marketing and selling their lawn mowers and lawn mower engines, engaged in the misrepresentations and omissions set forth in this Complaint, or the falsity of Defendants' material misrepresentations.

117.    Plaintiff and members of the Class relied upon the truth of the representations made by Defendants in advertising, marketing and selling Defendants' products to Plaintiff and members of the Class.

118.    Plaintiff and members of the Class had the right to rely upon Defendants' representations made in the course of Defendants' advertising, marketing and selling their lawn mowers and lawn mower engines to the public, including Plaintiff and members of the Class.

119.    As a proximate result of Defendants' misrepresentations and omissions as set forth in this Complaint, Plaintiff and members of the Class were injured and suffered damages, including paying for products that were not as represented by Defendants.

120.    Through the above-described deceptive means, Defendants unlawfully procured the consent of Plaintiff and the members of the Class to enter into agreements to purchase Defendants' lawn mowers and lawn mower engines.

121.    Plaintiff and members of the Class were harmed in the same manner and by the same course of conduct alleged in this Complaint.

122.    Plaintiff and members of the Class seek recovery of damages in an amount to be determined at trial.

## COUNT 2

### Negligent Misrepresentation

123.    Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

124.    In advertising, marketing and selling their lawn mowers and lawn mower engines in Puerto Rico, including to Plaintiff and members of the Class, Defendants made the following misrepresentations:

a.      Defendants misrepresented the horsepower of their lawn mowers and lawn mower engines in that the actual horsepower of Defendants' lawn mowers and lawn mower engines is less than as represented by Defendants.

b.      While misrepresenting the horsepower of their lawn mowers and lawn mower engines, Defendants concealed, suppressed, omitted and failed to disclose material facts, including the true, lower horsepower of their lawn mowers and lawn mower engines.

c.      In advertising, marketing and selling lawn mowers containing identical engines that produce the same horsepower as different products at different prices (higher prices for falsely represented higher horsepower), while misrepresenting and overstating the horsepower of such products, Defendants falsely represented such products.  Contrary to Defendants' representations, such products are not different products, contain identical engines and do not produce the horsepower represented by Defendants. Defendants concealed, suppressed, failed to disclose and omitted material facts concerning such products, including the facts that such products are

69178

not different products, contain identical engines and the true, lower

horsepower produced by such products.

125.    Defendants' representations and omissions were uniform as to each lawn mower, and no material variation exists among the representations and omissions made to Plaintiff and the Class for each lawn mower.

126.    Defendants had a pecuniary interest in making the misrepresentations set forth in this Complaint and in selling to consumers, including Plaintiff and members of the Class, Defendants' lawn mowers and lawn mower engines.

127.    Defendants owed a duty of care to consumers, including Plaintiff and members of the Class, to avoid fraudulent, deceptive, and misleading statements and to communicate truthful, non-deceptive information to consumers, including Plaintiff and members of the Class, in the course of Defendants' advertising, marketing and selling their products.

128.    Defendants breached the above duties by failing to exercise due care and by making the material misrepresentations set forth in this Complaint.

129.    Defendants' misrepresentations fraudulently induced Plaintiff and members of the Class to purchase lawn mower products.  Plaintiff and members of the Class justifiably relied upon the material misrepresentations.  Plaintiff and members of the Class did not know, and could not have discovered through reasonable diligence, that Defendants, in advertising, marketing and selling their lawn mowers and lawn mower engines, engaged in the misrepresentations and omissions set forth in this Complaint, or the falsity of Defendants' material misrepresentations.

130.    Plaintiff and members of the Class suffered pecuniary losses as the proximate result of their reliance upon Defendants' misrepresentations as set forth in this Complaint, including paying for products that were not as represented by Defendants.

131.    Plaintiff and members of the Class were harmed in the same manner and by the same course of conduct alleged in this Complaint.

132.    Plaintiff seeks damages in an amount to be determined at trial.

## COUNT 3

### Unjust Enrichment

133.    Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

134.    Plaintiff on behalf of himself and the consumers in Puerto Rico brings a claim for unjust enrichment.

135.    By means of the unlawful conduct set forth in this Complaint – including Defendants' fraudulent acts in violation of the Civil Code and law of Puerto Rico, and their conspiracy to defraud the public –  Defendants knowingly advertised and sold to Plaintiff and members of the Class thousands of lawn mowers and lawn mower engines which were not as represented by Defendants, produced less horsepower than as represented by Defendants, and/or, contrary to Defendants' misrepresentations and omissions, were not different products but contained identical engines that produced the same horsepower and were advertised and sold by Defendants at different prices (higher prices for falsely represented higher horsepower).

136.    As a result of their unlawful conduct as set forth in this Complaint, Defendants' have realized substantial revenue from sales of Defendants' lawn mowers and lawn mower engines at the expense, and to the detriment or impoverishment, of Plaintiff and members of the Class and to the benefit and enrichment of Defendants.  Defendants have thereby violated fundamental principles of justice, equity and good conscience.

69178                                            35

137.    Plaintiff and members of the Class have conferred significant financial benefits and have paid substantial compensation to Defendants for products that were not as represented by Defendants.

138.    It is inequitable for Defendants to retain the proceeds they have received and continue to receive, without justification, based on sales of Defendants' misrepresented products to Plaintiff and members of the Class.  Defendants knowingly received and retained such benefits and funds from Plaintiff and members of the Class.  Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

139.    Plaintiff has no adequate remedy at law for Defendants' unjust enrichment.

140.    Plaintiff and members of the Class seek an order mandating restitution and disgorgement of monies Defendants have unjustly obtained and the restoration of such ill-gotten monies to Plaintiff and members of the Class.

## COUNT 4

### Civil Conspiracy

141.    Plaintiff realleges and incorporates all prior paragraphs of this Complaint.

142.    Plaintiff on behalf of himself and the consumers in Puerto Rico brings a civil conspiracy claim.

143.    Defendants know that other Defendants' lawn mower engines do not produce the horsepower represented by such other Defendants.  Such knowledge derives, in part, from Defendants' testing of other Defendants' engines and from communications, meetings and conferences between and among Defendants as set forth in this Complaint.  Defendants are aware that the other Defendants misrepresent and overstate the horsepower of their lawn mowers

and lawn mower engines and that other Defendants conceal, suppress and fail to disclose to the public the true, lower horsepower of their products.

144.    Despite knowing of the other Defendants' horsepower misrepresentations and omissions, Defendants agreed among and between themselves and conspired to conceal and suppress truthful information about the actual, lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines, and to conceal and suppress truthful information that would expose other Defendants' misrepresentations, overstatements and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while concealing and suppressing truthful information about the actual, lower-than-represented horsepower of Defendants' own lawn mowers and lawn mower engines.

145.    In furtherance of the conspiracy, Defendants actively concealed and suppressed truthful information concerning the actual horsepower of other Defendants' lawn mowers and lawn mower engines and concealed and suppressed truthful information that would expose other Defendants' misrepresentations, overstatements and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while continuing to misrepresent, significantly overstate and conceal and suppress information concerning the actual, lower horsepower of Defendants' own lawn mowers and lawn mower engines.  Defendants acted for the common purpose and design of avoiding detection, earning revenue from advertising and selling products that were not as represented to the public, and concealing their unlawful conduct from Plaintiff and the public.

146.    As set forth in this Complaint, Defendants committed unlawful acts or practices in furtherance of the conspiracy, including:

a.   Concealing and suppressing truthful information about the actual, lower-than-represented horsepower of other Defendants' lawn mowers and lawn mower engines and concealing and suppressing truthful information that would expose other Defendants' misrepresentations, overstatements and omissions relating to the horsepower of other Defendants' lawn mowers and lawn mower engines, while continuing to misrepresent, overstate and conceal and suppress information concerning the true, lower-than-represented horsepower of Defendants' own lawn mowers and lawn mower engines;

b.   Reporting by Defendants Briggs & Stratton, Kawasaki, Tecumseh, Toro, Kohler, and Platinum (doing business as Tecumseh Power Company) of horsepower ratings to the EPA and CARB that are significantly lower than the inflated, false, misleading and deceptive horsepower representations Defendants make in advertising, marketing and selling Defendants' lawn mower engines;

c.   Suppressing and concealing, by Defendants Briggs & Stratton, Kawasaki, Tecumseh, Toro, Kohler, and Platinum (doing business as Tecumseh Power Company), both the lower horsepower ratings they report to the EPA and CARB and the fact that they report horsepower ratings to the EPA and CARB that are lower than the horsepower ratings represented by Defendants in advertising, marketing and selling their lawn mower engines;

d.      Amending, causing to be amended, or adversely influencing the amendment of the voluntary industry standard SAE J 1940 in order to conceal Defendants' past horsepower misrepresentations and omissions and to allow Defendants to continue, and continue to conceal, their horsepower misrepresentations and omissions;

e.      Concealing and suppressing the fraudulent, deceptive purpose of the amendments to the SAE standard and creating false or misleading explanations for the adoption or purpose of those amendments;

f.      Engaging in the unfair, deceptive, or unconscionable acts and practices and the false or misleading advertising practices set forth in this Complaint, in violation of Puerto Rico's Civil Code.

147.    Defendants consciously conspired and deliberately pursued a common plan or design to commit tortious acts, as set forth in this Complaint, subjecting Defendants to joint and several liability.

148.    Defendants conspired and acted in furtherance of the conspiracy for the common purpose of perpetuating Defendants' fraudulent horsepower inflation scheme in order to maximize profits from the advertising and sale of Defendants' lawn mowers and lawn mower engines that were not as represented by Defendants.  Defendants' horsepower inflation scheme is dependent upon each Defendant's concealment and suppression of truthful information concerning other Defendants' horsepower misrepresentations and overstatements and the concealment and suppression of the true, lower-than-represented horsepower of other Defendants' products, thereby allowing each Defendant to continue to misrepresent, overstate

and conceal and suppress truthful information concerning the actual, lower horsepower contained in Defendants' own lawn mowers and lawn mower engines.

149.    Defendants' unlawful conduct set forth in this Complaint was done as part of a conspiracy to deceive and mislead Plaintiff and members of the public in violation of Puerto Rico's Civil Code.

150.    As a proximate result of Defendants' conspiracy, and Defendants' tortious, unlawful conduct in furtherance of the conspiracy, Plaintiff and members of the Class have been injured and have suffered damages, including paying for products that were not as represented by Defendants, and paying more for such products than Plaintiff and members of the Class would have paid in the absence of Defendants' conspiracy.

151.    Plaintiff and members of the Class seek recovery of damages, in an amount to be determined at trial, caused by Defendants' conspiracy and Defendants' unlawful acts in furtherance of their conspiracy to defraud Plaintiff and the public.

## VIII.   JURY DEMAND

152.    Plaintiff and members of the Class respectfully demand a trial by jury.

## IX.    REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully request that the Court award judgment, jointly and severally, against Defendants as follows:

A.    Entering an order certifying this action as a Class action, properly brought by Plaintiff on behalf of the Class, as defined in this Complaint; certifying Plaintiff as representative of the Class; and appointing Plaintiff's counsel as counsel for the Class, pursuant to the Federal Rules of Civil Procedure and the Consumer Class Action Act, P.R. Laws Ann. 32 §§ 3341-3344;

B.      Declaring that Defendants' acts and practices as set forth in this Complaint constitute multiple, separate violations of the above Puerto Rico Civil Code provisions and Puerto Rico law rules;

C.      Enjoining Defendants from engaging in the unlawful acts and practices set forth in this Complaint and from further violations of the Puerto Rico Civil Code and;

D.      Enjoining Defendants from misrepresenting to the consuming public any power rating regarding their engines or lawn mowers;

E.      Awarding Plaintiff and the members of the Class actual, compensatory damages in an amount to be determined at a jury trial;

F.      Ordering Defendants to disgorge to Plaintiff and the members of the Class all monies unjustly received through Defendants' unlawful conduct;

G.      Awarding restitution to Plaintiff and members of the Class as provided by law;

H.      Awarding Plaintiff and members of the Class pre-judgment and post-judgment interest as provided by law;

I.      Awarding Plaintiff and the Class costs and reasonable attorneys' fees as provided by law; and

J.      Granting Plaintiff and the Class such other and further relief as the Court finds just and proper.

SUBMITTED: May 8, 2009.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor
San Juan, Puerto Rico  00912
Tel: (787) 641-4545;  Fax: (787) 641-4544

BY:      s/ David C. Indiano
**DAVID C. INDIANO**
**USDC PR Bar No.  200601**
david.indiano@indianowilliams.com

69178                                       41

Vincent J. Esades
Renae D. Steiner
Scott W. Carlson
**HEINS MILLS & OLSON, P.L.C.**
310 Clifton Avenue
Minneapolis, MN 55403
Telephone: (612) 338-4605

Brian M. Sund
Joshua G. Hauble
Jackson D. Bigham
**MORRISON FENSKE & SUND, P.A.**
5125 County Road 101, Suite 202
Minnetonka, MN 55345
Telephone: (952) 975-0050

**ATTORNEYS FOR PLAINTIFF**